# United States Court of Appeals for the Federal Circuit

---

**ROSS VASSALLO,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

---

2015-3101

---

Petition for review of the Merit Systems Protection Board in No. PH-3330-13-0049-R-1.

---

Decided: August 14, 2015

---

ROSS VASSALLO, Easton, CT, pro se.

ALBERT S. IAROSSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

---

Before PROST, *Chief Judge*, WALLACH and TARANTO, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Petitioner Ross Vassallo appeals the decision of the Merit Systems Protection Board ("the Board") denying his request for corrective action. *See Vassallo v. Dep't of Def.*, PH-3330-13-0049-R-1 (M.S.P.B. Jan. 15, 2015) (Resp't's App. 50–55). Mr. Vassallo, a veteran, sought corrective action from the Board after he applied for a position at the Department of Defense ("DOD"), and the Office of Personnel Management ("OPM") determined that the DOD was not required to afford him veterans employment preferences under the Veterans Employment Opportunities Act of 1998 ("VEOA"). The central question in this appeal is whether OPM's regulation permissibly fills a gap in the governing statute. The Board found that it did. The court affirms.

BACKGROUND

I. Legal Framework

"Federal agencies generally use two types of selection to fill vacancies: (1) the open 'competitive examination' process and (2) the 'merit promotion' process." *Joseph v. Fed. Trade Comm'n*, 505 F.3d 1380, 1381 (Fed. Cir. 2007) (citation omitted). "The merit promotion process is used when the position is to be filled by an employee of the agency or by an applicant from outside the agency who has 'status' in the competitive service." *Id.* at 1382 (citations omitted).

In 1998, Congress passed the VEOA to ensure that veterans receive due consideration when they apply for vacant positions available through the merit promotion process. *See generally* Veterans Employment Opportunities Act of 1998, Pub. L. No. 105-339, 112 Stat. 3182 (codified as amended in scattered sections of 2, 3, 5, 10, 28, 31, 38, and 49 U.S.C.). In relevant part, Congress provided veterans "may not be denied the opportunity to compete for vacant positions for which the agency making

the announcement will accept applications from individuals outside its own workforce under merit promotion procedures." 5 U.S.C. § 3304(f)(1) (2012). The statute does not define "agency." To fill this gap, Congress provided that "[OPM] shall prescribe regulations necessary for the administration of this subsection." *Id.* § 3304(f)(5).

OPM promulgated such regulations in Title 5 of the Code of Federal Regulations. The regulations parrot the statutory mandate, explaining that eligible veterans "may compete for vacancies under merit promotion when an agency accepts applications from individuals outside its own workforce" and, if selected, veterans "will be given career or career conditional appointments under § 315.611 of this chapter." 5 C.F.R. § 335.106 (2012). The regulations define "agency" as "an executive agency as defined in 5 U.S.C. [§] 105." 5 C.F.R. § 315.611(b). The statutory provision cited by the regulations defines "executive agency" as "an Executive department, a Government corporation, and an independent establishment." 5 U.S.C. § 105. An executive department includes, among others, the DOD. 5 U.S.C. § 101.

## II. Facts and Proceedings

The Defense Contract Management Agency ("DCMA"), a sub-agency within the DOD, employed Mr. Vassallo as a computer engineer in 2012. That summer, DCMA announced a vacancy for the position of Lead Interdisciplinary Engineer. The announcement stated that only certain individuals could apply for the position, namely "[c]urrent [DCMA]" employees or "[c]urrent [DOD] [e]mployee[s] with the Acquisition, Technology, and Logistics . . . [w]orkforce who are outside of the Military Components." Resp't's App. 7. Mr. Vassallo submitted an application, but DCMA rejected it on the basis that he failed to submit the requisite forms.

Mr. Vassallo subsequently sought corrective action from the Board. In these circumstances, the Board au-

thority to grant corrective action falls under 5 U.S.C. § 3330a(d), which provides for review of a qualified veteran's allegation that an agency has violated 5 U.S.C. § 3304(f)(1). Mr. Vassallo's claim to the Board, therefore, depends on whether 5 U.S.C. § 3304(f)(1) applies to the hiring process about which he complains. Errors in the handling of Mr. Vassallo's application are outside the Board's authority unless 5 U.S.C. § 3304(f)(1) applies.

He did not succeed in his efforts. Before an administrative judge, Mr. Vassallo alleged that DCMA violated 5 U.S.C. § 3304(f)(1) because DCMA was the relevant agency making the announcement and the post invited applications from non-DCMA employees. As an initial matter, the administrative judge held that DCMA erred in rejecting Mr. Vassallo's application because he had, in fact, submitted the correct forms. Nevertheless, the administrative judge found that Mr. Vassallo did not demonstrate that DCMA violated the statute. The administrative judge held that "agency" in 5 U.S.C. § 3304(f)(1) meant the DOD, not DCMA. Resp't's App. 11–12. The administrative judge relied upon OPM's "VetGuide," which explains that "agency" under the VEOA means "parent agency, *i.e.*, Treasury, not the Internal Revenue Service, and the [DOD], not Department of the Army." *Id.* at 12. Because DCMA accepted applications only from DOD employees, the administrative judge held that DCMA did not accept applications from outside the DOD workforce and, consequently, denied Mr. Vassallo's request for corrective action. *Id.* Mr. Vassallo subsequently appealed to the full Board.

After initially reversing the administrative judge, the Board reconsidered its decision and rejected Mr. Vassallo's request for corrective action. The Board rejected OPM's argument that "agency" in 5 U.S.C. § 3304(f)(1) unambiguously borrows from the definition of "Executive agency" in 5 U.S.C. § 105, finding instead that "[t]he unmodified term 'agency' is not defined in 5 U.S.C.

§§ 101–105." *Id.* at 54. The Board next observed that OPM permissibly filled this gap with the regulatory definition provided in 5 C.F.R. § 315.611(b). According to the Board, OPM's decision to define "the word 'agency' in 5 U.S.C. § 3304(f)(1) to mean 'Executive agency' as defined in 5 U.S.C. § 105 is a permissible construction of the statute." *Id.* at 54–55. The Board concluded that DCMA was not required to give Mr. Vassallo an opportunity to compete under 5 U.S.C. § 3304(f)(1) because the DOD—the agency making the announcement—did not accept applications from outside its own workforce. *Id.* at 55. Accordingly, the Board denied Mr. Vassallo's request for corrective action.

Mr. Vassallo appeals. The court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012).

DISCUSSION

I. Standard of Review

This court's "scope of . . . review of [B]oard decisions is limited to whether they are (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995) (citing 5 U.S.C. § 7703(c) (1988)). Petitioner bears the burden of establishing error in the Board's decision. *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998). The court reviews the Board's legal determinations de novo. *Welshans v. U.S. Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008).

We review an agency's statutory interpretation using the two-pronged framework established by *Chevron, U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The first prong requires the court to assess "whether Congress has directly spoken to the precise

question at issue"; if so, the court "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. If the statute does not answer the specific question, meaning that it is "silent or ambiguous," then the court must discern whether the agency provided "a permissible construction of the statute." *Id.* at 843; *Wilder v. Merit Sys. Prot. Bd.*, 675 F.3d 1319, 1322 (Fed. Cir. 2012). "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Chevron*, 467 U.S. at 843–44. "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844 (footnote omitted).

## II. The Board Properly Afforded Controlling Weight to OPM's Regulation

Mr. Vassallo argues that the OPM regulation contradicts the plain terms of the statute and otherwise unreasonably undermines the purpose of the VEOA. The government counters that the Board erred because the statute is unambiguous and that, alternatively, the Board correctly deferred to OPM's regulation. The Board properly deferred to OPM's regulation.

### A. The Statute is Ambiguous

The government contends that the Board "was not required to defer to OPM's regulation[] because the plain language of the statute makes clear that DOD is 'the agency' for purposes of the VEOA." Resp't Br. 9–10. Because 5 U.S.C. § 105 defines "executive agency" to cover "executive departments," not the executive departments' subcomponents, the government argues that "the use of the word 'agency'" in 5 U.S.C. § 3304(f)(1) "to mean 'Executive Agency' follows naturally when examining the statutory scheme as a whole." *Id.* at 11.

The statutory scheme does not answer the precise question, i.e., whether "agency" in 5 U.S.C. § 3304(f)(1) means "executive agency" in 5 U.S.C. § 105. Section 105 of Title 5 of the United States Code provides that "[f]or purposes of [5 U.S.C.], 'Executive agency' means Executive department . . . ." 5 U.S.C. § 105. In turn, § 101 of the same title explains that the term "Executive departments" includes, among others, the DOD. 5 U.S.C. § 101. The Board correctly observed that "[t]he unmodified term 'agency' is not defined in 5 U.S.C. §§ 101–105." Resp't's App. 54; *see* 5 U.S.C. §§ 101 (where "agency" does not appear), 102 (same), 103 (same), 104 (same), 105 (where "executive" modifies "agency"). Indeed, neither "executive" nor "department" appears in 5 U.S.C. § 3304, still less do they appear in subsection (f) of that provision. As a result, we cannot say that Congress unambiguously intended to equate "agency" in 5 U.S.C. § 3304(f)(1) with "executive agency" in 5 U.S.C. § 105. In view of this ambiguity, the Board properly proceeded to the second step under *Chevron*.

## B. OPM's Regulation Governs

Mr. Vassallo raises a series of statistics-based arguments about the alleged universe of civil and military employees in federal service.[1] Mr. Vassallo argues that these statistics demonstrate that 5 C.F.R. § 315.611(b) unreasonably expands the pool of potential workers from which the DOD may hire and, as a consequence, limits the benefits that Congress intended for the VEOA to provide to veterans.

---

[1]    Mr. Vassallo offered virtually none of the statistics that he discusses in his brief to the Board. Because the court disposes of his appeal on other grounds, we need not address the appropriateness *vel non* of judicial notice.

Statistics alone, however, do not govern this court's analysis of OPM's regulation; rather, we must discern whether the regulation "[is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. As previously stated, OPM's regulation defines "agency" as "an executive agency as defined in 5 U.S.C. [§] 105." 5 C.F.R. § 315.611(b). As explained above, "executive agency" encompasses "executive departments," which include the DOD but not its subcomponents, such as DCMA. 5 U.S.C. §§ 101, 105. The Board observed that "[t]here can be no doubt that interpreting the word 'agency' in 5 U.S.C. § 3304(f)(1) to mean 'Executive agency' as defined in 5 U.S.C. § 105 is a permissible construction of the statute." Resp't's App. 54–55. The court agrees, particularly given that Congress expressly directed OPM to "elucidate a specific provision of the statute by regulation" and that those regulations warrant "controlling weight." *Chevron*, 467 U.S. at 843–44; *see* 5 U.S.C. § 3304(f)(5) ("[OPM] shall prescribe regulations necessary for the administration of this subsection"). An agency regulation that adopts as its own a relevant definition from the governing statutory scheme does not "manifestly contra[dict]" the statute. *Cf. Chevron*, 467 U.S. at 844.

CONCLUSION

Accordingly, the decision of the Merit Systems Protection Board is

**AFFIRMED**

COSTS

Each party shall bear its own costs.