# United States Court of Appeals for the Federal Circuit

---

**SUSAN FITZGERALD,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2015-3154

---

Petition for review of the Merit Systems Protection Board in No. AT-0831-14-0684-I-1.

---

Decided: September 20, 2016

---

JOHN C. HERMAN, Robbins Geller Rudman & Dowd LLP, Atlanta, GA, argued for petitioner. Also represented by CARLTON JONES, ROBERT JAMES LEONARD.

TARA K. HOGAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., PATRICIA M. MCCARTHY, KRISTIN MCGRORY.

---

Before DYK, SCHALL, and HUGHES, *Circuit Judges.*

SCHALL, *Circuit Judge*.

Susan Fitzgerald is an employee of U.S. Customs and Border Protection ("the Agency"), a component of the Department of Homeland Security ("DHS"). She currently works as a "Law Enforcement Specialist (Forensics/Investigative Instructor)" at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. In this appeal, she challenges the April 2, 2015 final decision of the Merit Systems Protection Board ("Board") that sustained the denial by the Agency of her request for secondary Customs and Border Protection Officer ("CBPO") retirement credit based upon her service as an Instructor at FLETC. J.A. 1–8. For the reasons set forth below, we affirm.

BACKGROUND

I.

Federal retirement laws extend enhanced benefits to certain groups, such as law-enforcement officers ("LEOs") and firefighters, who have served in physically rigorous positions. Under the Federal Employees' Retirement System ("FERS"),[1] those benefits include, *inter alia*, eligibility to retire with an annuity at an earlier age than many other federal employees and eligibility to retire based on fewer years of service. *Compare* 5 U.S.C. § 8412(a) (2012) (providing an annuity once an employee

---

[1]    Congress established FERS in 1986 as a successor to the retirement benefits scheme for federal employees under the Civil Service Retirement System. *See* Federal Employees' Retirement System Act of 1986, Pub. L. No. 99–335, § 101, 100 Stat. 514, 516–17; S. REP. NO. 99-166, at 1 (1986). Both systems presently remain in effect; persons employed on or after January 1, 1984, are automatically placed in FERS. *See* 5 U.S.C. § 8401(11) (1988); 42 U.S.C. § 410(a)(5) (1988).

has reached the age of 55 and has completed 30 years of service) *with id.* § 8412(d)(1),(2) (providing an annuity at any age after completing 25 years of service as an LEO or firefighter, or after reaching the age of 50 and completing 20 years of such service). Germane to this case, in 2007, Congress passed legislation ("the Act") that amended the federal retirement statutes to provide to employees who qualify as CBPOs enhanced retirement benefits similar to those available to LEOs and firefighters. *See* Consolidated Appropriations Act, 2008, Pub. L. No. 110–161, § 535, 121 Stat. 1844, 2075–77. The Act became effective on July 6, 2008. *See id.* § 535(e)(1). As charged by section 535(d) of the Act, the Office of Personnel Management ("OPM") has issued regulations governing enhanced retirement benefits for CBPOs. *See* Customs and Border Protection Officer Retirement, 76 Fed. Reg. 41,993 (July 18, 2011) (codified at 5 C.F.R. pt. 842, subpt. J).

## II.

Ms. Fitzgerald began her career with the federal government as an Immigration Inspector (GS-1816 series) with the Immigration and Naturalization Service ("INS") of the Department of Justice. She worked in that capacity from August 2, 1987, to July 2, 1988. Subsequently, from July 3, 1988, to May 6, 2000, she served as a Customs Inspector (GS-1890 series) with the Customs Service ("Customs") of the Department of the Treasury.[2]

---

[2] In March 2003, INS ceased to exist and its functions were transferred to DHS. At the same time, Customs became part of DHS and the agency was renamed the Bureau of Customs and Border Protection. *See* Homeland Security Act of 2002, Pub. L. No. 107–296, § 1502, 116 Stat. 2135, 2308; REORGANIZATION PLAN MODIFICATION FOR THE DEPARTMENT OF HOMELAND SECURITY, H.R. DOC. NO. 108–32, at 4 (2003). Subsequently, the agency was renamed U.S. Customs and

Ms. Fitzgerald has been continuously employed in various Instructor positions at FLETC since May of 2000.[3] One of her main responsibilities while at FLETC has been providing training to criminal investigators and LEOs from various federal organizations.

On August 3, 2012, Ms. Fitzgerald requested that the Agency review her employment history so that she could obtain CBPO retirement credit for her past service with INS and Customs. The Agency denied her request on July 25, 2013, stating that the Act did not provide "retroactive service" credit for service performed before July 6, 2008, the effective date of the Act. Ms. Fitzgerald requested reconsideration and sought CBPO credit for her service at FLETC after the Act's effective date; the Agency denied her request on April 17, 2014.

## III.

Ms. Fitzgerald timely appealed the denial of her claim to the Board. After conducting a hearing on September 19, 2014, the administrative judge ("AJ") to whom the appeal was assigned affirmed the Agency's denial in an initial decision dated September 29, 2014. *Fitzgerald v. Dep't of Homeland Sec.*, AT-0831-14-0684-I-1, 2014 WL 4987282 (Sept. 29, 2014) ("*Initial Decision*"). In arriving at his decision, the AJ examined the pertinent statutory and regulatory framework for determining whether

---

Border Protection. *See* Name Change From the Bureau of Immigration and Customs Enforcement to U.S. Immigration and Customs Enforcement, and the Bureau of Customs and Border Protection to U.S. Customs and Border Protection, 72 Fed. Reg. 20,131 (Apr. 23, 2007).

[3] The record indicates that Ms. Fitzgerald has been an Instructor at FLETC since May of 2000, even though her position title has changed. *See* J.A. 205, 207, 215, 221.

Ms. Fitzgerald is entitled to CBPO retirement credit based upon her service at FLETC.

The Act amended FERS to make CBPOs eligible for enhanced retirement benefits. *See* Consolidated Appropriations Act, 2008, § 535(b)(2) (codified at 5 U.S.C. § 8412(d)). The Act defines a CBPO as

> an employee in [DHS] (A) who holds a position within the GS-1895 job series (determined applying the criteria in effect as of September 1, 2007) or any successor position, and (B) whose duties include activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry, *including any such employee who is transferred directly to a supervisory or administrative position in [DHS]* after performing such duties (as described in subparagraph (B)) in 1 or more positions (as described in subparagraph (A)) for at least 3 years.

*Id.* § 535(b)(1)(C) (codified at 5 U.S.C. § 8401(36)) (emphasis added). As noted, the amendments made by section 535 of the Act became effective on July 6, 2008. *See id.* § 535(e)(1). In regard to service performed before its effective date, the Act provides as follows:

> (i) GENERAL RULE.—Except as provided in clause (ii), nothing in this section or any amendment made by this section shall be considered to apply with respect to any service performed as a [CBPO] before [July 6, 2008].

> (ii) EXCEPTION.—Service described in section . . . 8401(36) . . . rendered before [July 6, 2008] may be taken into account to determine if an individual who is serving on or after such effective date then qualifies as a [CBPO] by virtue of holding *a supervisory or administrative position in [DHS].*

*Id.* § 535(e)(2)(B)(i)-(ii) (emphasis added). Thus, while not retroactive, the Act is retrospective. In other words, it does not allow service rendered before the July 6, 2008 effective date to form the basis for CBPO retirement credit. However, it does permit such prior service to be considered when determining whether a position held in DHS on or after the effective date (Ms. Fitzgerald's circumstance) qualifies as a "supervisory or administrative" position for purposes of CBPO retirement credit (the question in Ms. Fitzgerald's case). *See* 76 Fed. Reg. at 41,994 (explaining that if an individual is in a supervisory or administrative position on July 6, 2008, that individual's eligibility to be a CBPO will be determined by "looking back at the individual's employment history to determine whether the requirements for coverage would have been met if the provisions of [section] 535 had been in effect during the earlier employment history").

Pursuant to its authority to promulgate regulations to implement the amendments to FERS, OPM issued final regulations governing enhanced retirement benefits for CBPOs on July 18, 2011. The regulations' definition of CBPO relates to the definition of CBPO in 5 U.S.C. § 8401(36). *See* 5 C.F.R. § 842.1002. Like the statute, the regulations split CBPOs into two categories of positions (referred to in the regulations as "primary" and "secondary" positions) for which early retirement coverage under 5 U.S.C. § 8412(d) may be available. *See id.*

Under the regulations, a primary CBPO position is a position "classified within the [CBPO] (GS–1895) job series (determined applying the criteria in effect as of September 1, 2007) or any successor position whose duties include the performance of work directly connected with activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry." 5 C.F.R. § 842.1002. As will be seen, Ms. Fitzgerald does not contend that her employment at FLETC has been in primary CBPO positions. Rather, she argues that her

employment at FLETC has been in secondary CBPO positions and that, for that reason, she is entitled to CBPO retirement credit. Pertinent to Ms. Fitzgerald's claim, a secondary CBPO position is a position in DHS that is either:

> (1) Supervisory; i.e., a position whose primary duties are as a first-level supervisor of [CBPOs] in primary positions; or

> (2) Administrative; i.e., an executive, managerial, technical, semiprofessional, or professional position *for which experience in a primary [CBPO] position is a prerequisite*.

*Id.* (emphasis added).

An employee's service in a primary CBPO position is automatically "covered," meaning the service is credited toward retirement eligibility under 5 U.S.C. § 8412(d). *See id.* § 842.1003(a)(1). However, in order for an employee's service in a secondary CBPO position to be covered, the regulations require that the service meet certain criteria. *See id.* § 842.1003(b). With some exceptions not applicable to this case, the employee must have (1) transferred directly (i.e., without a break in service exceeding 3 days) from a primary position to a secondary position, (2) completed 3 years of service in a primary position, and (3) been continuously employed in secondary positions since transferring from a primary position without a break in service exceeding 3 days. *See id.* § 842.1003(b)(1)-(3). Because the determination of whether an employee is in a covered secondary position might, as it does here in Ms. Fitzgerald's case, require consideration of employment periods that occurred before September 1, 2007, the regulations include counterpart definitions of primary and secondary positions solely for the purpose of applying the criteria of § 842.1003(b)(1)-(3) to those periods. *See id.* § 842.1003(c). A primary position in that context (hereinafter, a "Retrospective CBPO

Position") is deemed to include a CBPO position classified in the GS-1895 series and a predecessor CBPO position that would have been classified in the GS-1895 series had it then existed.[4]  *See id.* § 842.1003(c)(1)(i)-(ii).  For the same purpose, the regulations provide that a secondary position in that context includes:

> (i) A first-level supervisor of an employee in [a Retrospective CBPO Position]; or

> (ii) A executive, managerial, technical, semiprofessional, or professional position *for which experience in [a Retrospective CBPO Position] is a mandatory prerequisite.*

---

[4]    Specifically, § 842.1003(c)(1)(i)-(ii) provides that a Retrospective CBPO Position includes:

> (i) A position whose duties included the performance of work directly connected with activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry that was classified within the Immigration Inspector Series (GS–1816), Customs Inspector Series (GS–1890), Canine Enforcement Officer Series (GS–1801), or any other series which the agency head determines were predecessor series to the Customs and Border Protection Series (GS–1895), and that would have been classified under the GS–1895 series had it then existed; and

> (ii) A position within the Customs and Border Protection Series (GS–1895) whose duties included the performance of work directly connected with activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry.

*Id.* § 842.1003(c)(2)(i)-(ii) (emphasis added).

Before the Board, Ms. Fitzgerald did not contend that any of her Instructor positions at FLETC were primary positions; instead, she argued that they were secondary positions. Thus, to be entitled to CBPO retirement credit for her service at FLETC from the effective date of the Act (July 6, 2008) forward, Ms. Fitzgerald's prior service had to meet the criteria of § 842.1003(b)(1)-(3) *and* her Instructor positions after July 6, 2008, had to be secondary positions under § 842.1002.

In considering Ms. Fitzgerald's prior service, the AJ began by looking to the rules for service that occurred before September 1, 2007, because Ms. Fitzgerald transferred to FLETC in the year 2000. The AJ found that Ms. Fitzgerald's positions at INS and Customs qualified as Retrospective CBPO Positions, which meant she had completed the requisite 3 years of service in a primary position before transferring to FLETC. *See Initial Decision* at 4. Next, the AJ considered whether the Instructor position at FLETC to which Ms. Fitzgerald initially transferred ("the Initial Position") qualified as a secondary position. The AJ found that "there is no evidence" that the Initial Position qualified as a "first-level supervisor" position under § 842.1003(c)(2)(i). *See id.* Thus, the AJ explained, in order to meet the requirements of § 842.1003(b)(1), the Initial Position had to be an executive, managerial, technical, semiprofessional, or professional position for which experience in a Retrospective CBPO Position was a mandatory prerequisite, as required by § 842.1003(c)(2)(ii). *See id.*

On this point, the AJ looked to the Initial Position's job description and determined that experience in a Retrospective CBPO Position was not a prerequisite for

the position.[5]  Rather, the AJ noted, the position descrip-
tion only required experience or knowledge as an LEO.
*Id.*  According to the AJ, although Ms. Fitzgerald acquired
the requisite knowledge and skill to qualify for the Initial
Position through her years of service in Retrospective
CBPO Positions with INS and Customs, the position
description included no language suggesting that
knowledge or experience unique to CBPOs was required
to perform the duties of the Initial Position.  *See id.* at 4–
5.  The AJ therefore concluded that the Initial Position
did not qualify as a secondary position under
§ 842.1003(c)(2)(ii).  *Id.* at 5.  Consequently, the AJ found
that Ms. Fitzgerald could not establish that, when she
stepped into the Initial Position, she transferred directly
from a primary position to a secondary position.  *Id.*  She
therefore could not establish that her prior service met all
of the criteria of § 842.1003(b)(1)-(3).[6]  *See id.*

---

[5]    The AJ noted that Ms. Fitzgerald and the Agency
disputed the position description under which the Initial
Position fell.  *Initial Decision* at 4.  However, for the
purpose of this case, the AJ assumed that Ms. Fitzgerald's
proffered description was correct.  *See id.*  We do too.

[6]    In light of his determination that Ms. Fitzgerald
did not transfer directly from a primary to a secondary
position, the AJ added that, even if the Instructor posi-
tions to which Ms. Fitzgerald was later assigned qualified
as secondary positions, her time at FLETC could not be
credited toward retirement because she was employed in
the Initial Position for more than 3 days.  *See id.* at 5.
Thus, contrary to the requirements of 5 C.F.R.
§ 842.1003(b), Ms. Fitzgerald had a break in service
exceeding 3 days between a primary position (the last of
her Retrospective CBPO Positions) and the first Instruc-
tor position she held after the Initial Position.  The AJ
accordingly did not determine whether her Instructor

In addition to her arguments on the merits of her eligibility for CBPO retirement credit, Ms. Fitzgerald asserted that OPM's regulations were inconsistent with the statute. The AJ disagreed. In his view, OPM's interpretation of the phrase "supervisory or administrative position in [DHS]" in 5 U.S.C. § 8401(36) is entitled to deference because, "at best, the statute is ambiguous" regarding its meaning. *See id.* at 8 n.2. Accordingly, the AJ affirmed the Agency's denial of Ms. Fitzgerald's claim for CBPO retirement credit for her service at FLETC from July 6, 2008, onward. *Id.* at 5.

Ms. Fitzgerald filed a petition for review of the *Initial Decision*. Echoing the AJ's reasoning, a two-member panel of the Board denied the petition and affirmed the *Initial Decision*, which became the Board's final decision. *See* J.A. 1–9. Ms. Fitzgerald timely petitioned for review of the final decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

I.

We review the Board's decision to determine whether it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2012); *Miller v. Fed. Deposit Ins. Corp.,* 818 F.3d 1361, 1365 (Fed. Cir. 2016). "Under the substantial evidence standard, this court reverses the Board's decision only 'if it is not supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shapiro v. Soc. Sec. Admin.,* 800 F.3d 1332, 1336 (Fed. Cir. 2015) (quoting

---

positions from July 6, 2008, forward in fact qualified as secondary positions under § 842.1002.

*Abrams v. Soc. Sec. Admin.*, 703 F.3d 538, 542 (Fed. Cir. 2012)).

Ms. Fitzgerald makes two arguments on appeal. First, she contends that the regulations upon which the Board based its decision should be found invalid for contradicting the plain language of 5 U.S.C. § 8401(36). And second, she urges that, even if the regulations are not invalid, the Board's decision should be reversed because the Initial Position was a secondary position. We turn first to her challenge to the regulations.

## II.

## A.

"Our review of questions of statutory interpretation is *de novo*, except to the extent deference to an agency's construction of a statute it administers is required under the two-step analysis set forth in *Chevron*." *NSK Ltd. v. United States*, 390 F.3d 1352, 1354 (Fed. Cir. 2004) (citation omitted); *see also Vassallo v. Dep't of Def.*, 797 F.3d 1327, 1330 (Fed. Cir. 2015) (explaining that we review an agency's statutory interpretation using the two-pronged framework established by *Chevron*). The first prong of *Chevron* requires us to assess "whether Congress has directly spoken to the precise question at issue"; if so, we "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). If the statute does not answer the specific question at issue, however, meaning that it is "silent or ambiguous," then, under prong two of *Chevron*, we must determine whether the agency provided "a permissible construction of the statute." *Id.* at 843; *Hymas v. United States*, 810 F.3d 1312, 1318 (Fed. Cir. 2016). "If Congress has explicitly left a gap for [an] agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Chevron*, 467 U.S. at 843–44. "Such legislative regulations are given controlling weight

unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844. In other words, to survive judicial scrutiny, an agency's interpretation of an ambiguous statute need not be "the only reasonable interpretation or even the most reasonable interpretation." *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1377 (Fed. Cir. 2013) (citation omitted).

Ms. Fitzgerald argues that OPM's regulations—namely, 5 C.F.R. §§ 842.1002 (defining secondary position) and 842.1003(c)(2) (defining secondary position retrospectively, prior to the effective date of the Act)—impermissibly contradict the plain language and purpose of 5 U.S.C. § 8401(36). In her view, § 8401(36) expressly provides that employees are entitled to CBPO status in a secondary position if they served in a covered primary position for at least 3 years (as she had prior to her transfer to FLETC) and then transferred directly to a supervisory or administrative position in DHS (as she contends she did). Because the statute does not qualify the latter requirement, she reasons, it entitles CBPOs who transferred to *any* supervisory or administrative position to maintain CBPO status so long as that position is "in DHS." Ms. Fitzgerald further argues that OPM's regulations contradict the broad language of the statute by further restricting entitlement to CBPO status to only those CBPOs who transfer or transferred into (a) CBPO-specific supervisory positions or (b) administrative positions that require CBPO-related experience as a prerequisite.

In support of her position, Ms. Fitzgerald avers that OPM's regulations also conflict with the purpose of the statute. According to Ms. Fitzgerald, the legislative history shows that the Act was intended to help recruit and retain CBPOs by providing to them the same retirement benefits enjoyed by LEOs. The regulations do not promote these goals, she contends, because, under the

regulations, CBPOs may not transfer to positions for which their experience is valuable but not a prerequisite without losing their CBPO status and associated retirement credit. Without such flexibility, Ms. Fitzgerald reasons, CBPOs have less incentive to work at DHS.

For its part, the government contends that the statute is silent regarding what constitutes a "supervisory or administrative" position for purposes of CBPO status. Given this silence, and pursuant to its statutory authority to administer the Act, the government argues, OPM promulgated valid regulations that are entitled to deference under *Chevron*. In the government's view, Congress's reliance on OPM to fill the gaps as to the meaning of the term "supervisory or administrative" position is consistent with its approach to retirement benefits for other special groups (e.g., LEOs and firefighters), which indicates it intended for the Act to be implemented in the same manner. The government also suggests that Congress's silence as to the meaning of this term is consistent with its express delegation of rulemaking authority to OPM to administer the Act.

Regarding prong two of *Chevron*, the government urges that OPM's interpretation is based on a permissible construction of the statute. According to the government, the regulations are consistent with the purpose of recruiting and retaining CBPOs because they provide enhanced retirement benefits to CBPOs consistent with those enjoyed by other special groups, and they ensure that senior CBPOs stay in the Agency to share their knowledge and experience with junior CBPOs.

### B.

In our view, Congress has not directly spoken to the precise question at issue in this case. We have explained that "[i]dentifying 'the precise question at issue' is a necessary prerequisite to determining whether or not Congress has directly spoken on it." *GHS Health Maint.*

*Org., Inc. v. United States*, 536 F.3d 1293, 1297 (Fed. Cir. 2008) (quoting *Chevron*, 467 U.S. at 842). The precise question at issue here, we think, is this: what constitutes a supervisory or administrative position in DHS for the purpose of meeting the definition of a CBPO? The statute is silent on this question. *See* 5 U.S.C. § 8401. Section 8401(36) defines a CBPO to include an "employee who is transferred directly to *a supervisory or administrative position in [DHS]*." *Id.* (emphasis added). The terms "supervisory" and "administrative" are not defined within the definition of a CBPO, however. Nor are they defined in any other part of the statute. In fact, the definitions for an LEO and a firefighter also include the "employee who is transferred directly to a supervisory or administrative position" language, but those definitions likewise fail to explain what constitutes a "supervisory or administrative position." *See id.* § 8401(14),(17),(33). Consequently, we think the statute does not clearly and unequivocally answer the question at hand.

Congress's awareness of OPM's approach to other special retirement groups bolsters our conclusion on the first prong of *Chevron*. As noted, LEOs and firefighters already received enhanced retirement benefits when the Act was enacted in 2007. Because the statute in place did not define "supervisory or administrative" positions for the purpose of qualifying as an LEO or a firefighter, OPM issued regulations that did. *See* 5 C.F.R. § 842.802. Given the general presumption that "Congress is knowledgeable about existing law pertinent to the legislation it enacts," *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988); *see also Minneapolis & St. Louis Ry. Co. v. United States,* 361 U.S. 173, 187 (1959) (presuming that Congress was aware of applicable regulations when enacting pertinent legislation), we agree with the government that Congress likely intended for the framework for CBPOs to be implemented similarly to that for LEOs and firefighters. Put another way, Congress likely in-

tended to leave a gap as to the meaning of a "supervisory or administrative position in [DHS]" that OPM would fill through regulations. Finally, our view of Congress's approach to § 8401(36) is also consistent with the Act's express delegation of rulemaking authority to OPM for the purpose of carrying out the amendments made by the Act. Consolidated Appropriations Act, 2008, § 535(d) ("Any regulations necessary to carry out the amendments made by [section 535] shall be prescribed by the Director of [OPM]."); *see also* 5 U.S.C. § 8461(g) (providing OPM the authority to "prescribe regulations to carry out the provisions of [FERS]").

Contrary to Ms. Fitzgerald's assertion, neither the statute nor the legislative history clearly demonstrates that Congress intended for secondary CBPO positions to include *any* supervisory or administrative position in DHS. Section 8401(36) plainly refers to "a" supervisory or administration position, not "any" such position. Accepting Ms. Fitzgerald's interpretation would impermissibly read the word "any" into the statute. *See Vallee v. Office of Pers. Mgmt.*, 58 F.3d 613, 615 (Fed. Cir. 1995) ("It is incorrect to read a statute contrary to its plain text, absent compelling evidence of contrary congressional intent.") Lest there be any doubt on this point, counsel for Ms. Fitzgerald agreed at oral argument before us that § 8401(36) cannot refer to *any* supervisory or administrative position in DHS. Oral Arg. at 3:34–40, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 15-3154.mp3 (The Court: So you agree that [§ 8401(36)] cannot be *any* supervisory or administrative position in [DHS], right? Counsel: Correct.).

Accordingly, we conclude that Congress has not "directly spoken" to the question of what constitutes a supervisory or administrative position in DHS for the purpose of meeting the definition of a CBPO under § 8401(36). We will therefore defer to OPM's interpreta-

tion as long as it is "a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

### C.

Turning to prong two of *Chevron*, we think 5 C.F.R. §§ 842.1002 and 842.1003(c)(2) are based on a permissible construction of the statute. As noted, the regulations do not conflict with the statute; instead, they merely cabin it by restricting entitlement to CBPO status to employees in certain CBPO-related positions. *See* 5 C.F.R. §§ 842.1002, 842.1003(c)(2). This restriction is reasonable for at least two reasons. First, it is reasonable to conclude that, for purposes of attaining CBPO status, all supervisory and administrative positions in DHS are not created equal. Indeed, there are likely many supervisory and administrative positions in DHS that have no connection to the CBPO occupation. After all, the Agency is only one of many governmental entities in DHS. *See* 6 U.S.C. § 203; REORGANIZATION PLAN MODIFICATION FOR THE DEPARTMENT OF HOMELAND SECURITY, H.R. DOC. NO. 108–32, at 4 (2003). Absent a restriction on where CBPOs in primary positions may transfer, a CBPO might be able to transfer, for example, to a position as an administrative assistant in human resources or to a position as an office administrator—positions for which CBPO experience is presumably neither required nor relevant—while maintaining the benefits of CBPO status for purposes of retirement. We do not think it is unreasonable to conclude that Congress did not intend for such results to occur.[7]

---

[7]     Notably, like the regulations for CBPOs, the regulations for LEOs and firefighters also restrict LEO and firefighter status to employees who transfer into (a) LEO- or firefighter-specific supervisory positions or (b) administrative positions that require law-enforcement or firefighting experience as a prerequisite. *See* 5 C.F.R. § 842.802.

And second, the restriction encourages career service as a CBPO. OPM explained that "one policy goal of special retirement coverage is to encourage career service by an employee in the particular occupation chosen by the employee." 76 Fed. Reg. at 41,996. Enticing employees in primary CBPO positions to transfer into, and remain in, CBPO-related positions in order to maintain CBPO status is a sound method for trying to increase the number of employees who remain in CBPO-related occupations throughout their careers.[8]

In any event, Ms. Fitzgerald does not explicitly argue that OPM's interpretation is an impermissible construction of the statute. Rather, she asserts that the regulations are inconsistent with the purpose of the Act, which could be read as a contention that the regulations are unreasonable. Either way, we are not persuaded. Ms. Fitzgerald cites legislative history that suggests the purpose of the Act is "to help recruit and retain [CBPOs] by providing them the same retirement benefits as other [LEOs]." H.R. REP. NO. 110-181, at 9 (2008). But even if we accept that the cited legislative history accurately reflects what Congress had in mind when it drafted the Act, the fact remains that the regulations do not limit the retirement benefits of CBPOs as compared to those of LEOs. Instead, they merely restrict *who* may attain CBPO status in order to obtain the same retirement

---

[8]    In our view, the regulations at issue are likely to achieve the stated "policy goal" because employees will be motivated to maintain CBPO status for at least 25 years (or for at least 20 years if they have reached the age of 50) in order to be eligible for early retirement with an annuity on account of their CBPO status. *See* 5 U.S.C. § 8412(d)(1),(2). Consequently, employees who start a career as a CBPO will have an incentive to stay in CBPO-related positions for the rest of their careers.

benefits as LEOs. In addition, while it may be true that more flexible regulations (e.g., ones allowing CBPOs to maintain their CBPO status even after transferring into secondary positions not having the existing, prior-experience requirement) would help recruit and retain CBPOs better than the regulations at issue do, that fact alone does not render OPM's interpretation unreasonable. *See Yangzhou*, 716 F.3d at 1377 (explaining that an agency's interpretation need only represent a "reasonable construction of the statute," not necessarily "the most reasonable interpretation") (citation omitted).

Accordingly, because we find that Congress has not answered the specific question at issue and because we find that OPM has provided a permissible construction of the statute, we conclude that the regulations at issue are not invalid.

### III.

### A.

We now turn to the Agency's denial of Ms. Fitzgerald's claim for retirement credit for her service at FLETC from July 6, 2008, forward.

Ms. Fitzgerald asserts that, even if the regulations at issue are not invalid, the Board incorrectly determined that the Initial Position was not a secondary position. The parties do not dispute that the Initial Position was not a supervisory position under 5 C.F.R. § 842.1003(c)(2)(i). Ms. Fitzgerald also concedes that the job description for the Initial Position did not explicitly state that experience in customs and border protection was required. Nevertheless, in her view, the job description made clear that the Initial Position required CBPO-related experience because it stated that FLETC Instructors must have the knowledge to train LEOs from a "wide variety" of Federal organizations, which she suggests includes the specialized law-enforcement area of customs

and border protection. According to Ms. Fitzgerald, FLETC would not have hired her but for her prior experience in Retrospective CBPO Positions.

The government responds that there is no evidence in the record indicating that the Initial Position required experience in a Retrospective CBPO Position. In its view, the job description alone is substantial evidence that an individual could have obtained the Initial Position without ever having served in a Retrospective CBPO Position.

## B.

As explained above, in order for Ms. Fitzgerald to prevail on her claim for retirement credit based upon her serving as an Instructor at FLETC, the Board had to find, *inter alia*, that CBPO experience in a Retrospective CBPO Position was a mandatory prerequisite for the Initial Position, meaning the Initial Position qualified as a secondary position under § 842.1003(c)(2)(ii). If such experience was not a prerequisite, Ms. Fitzgerald's service could not meet the criteria of § 842.1003(b). The Board concluded that the job description for the Initial Position indicated that such experience was not a prerequisite. J.A. 6–7. After reviewing the job description, we see no reason to disturb the Board's conclusion. *See* 5 C.F.R. § 842.1004(b) ("A determination under § 842.1003(b) must be based on the official position description and any other evidence deemed appropriate by the agency head for making the determination.").

On its face, the job description only required "[e]xperience in a primary Federal law enforcement position." *See* J.A. 351–53. Nor did it implicitly indicate that the requisite experience pertained to work related to the unique duties of an individual in a Retrospective CBPO Position—i.e., work directly connected with activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry. *See id.*; 5 C.F.R. § 842.1003(c)(1). Indeed, as the job title suggest-

ed—Law Enforcement Specialist (Instructor)—the listed duties reflect those of someone with prior law-enforcement experience, not necessarily experience in customs and border protection. *See* J.A. 351–53. Although Ms. Fitzgerald might train a "wide variety" of employees in law enforcement (including CBPOs), and although she might have obtained the Initial Position only by virtue of her prior service in Retrospective CBPO Positions at INS and Customs, that does not establish that her experience in those positions was a "mandatory prerequisite," as required under the regulations. Instead, it merely indicates that some overlap likely exists between the knowledge and experience required for the Initial Position and that gained by Ms. Fitzgerald while working in those positions.

Accordingly, we conclude that the Board's decision that Ms. Fitzgerald's prior service did not meet the criteria of § 842.1003(b) and that she therefore is not entitled to CBPO retirement credit for her time at FLETC is supported by substantial evidence.

## CONCLUSION

We hold that 5 C.F.R. §§ 842.1002 and 842.1003(c)(2) are not invalid, because they do not impermissibly contradict the plain language or purpose of 5 U.S.C. § 8401 and because they are based on a permissible construction of the statute. We also hold that the Board's final decision, which affirmed the Agency's denial of Ms. Fitzgerald's request for retirement credit, is supported by substantial evidence. We therefore affirm the final decision.

## AFFIRMED

### COSTS

Each party shall bear its own costs.